# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **RICHARD P. GARDEN, JR., Trustee,** | **CASE NO. 8:11CV292** |
| **Plaintiff,** | |
| v. | |
| **CENTRAL NEBRASKA HOUSING CORP., PINNACLE BANK OF NEWCASTLE WYOMING, SECURITY FIRST BANK, RICK ROBERTS, LORETTA SUE ROBERTS, JOHN ZAPATA, COLJO INVESTMENTS, LLC, PINNACLE BANK, and UNVERZAGT FEED LOT,** | **MEMORANDUM AND ORDER** |
| **Defendants.** | |

This matter is before the Court on the cross Motions for Partial Summary Judgment filed by Defendant Central Nebraska Housing Corp ("CNH") (Filing No. 12) and Defendants Rick Roberts and Loretta Sue Roberts (Filing No. 13). The Court has considered the briefs[1] (Filing Nos. 14, 17, 23, 26) and evidence (Filing Nos. 15, 18, 19, 21, 22) the parties

---

[1]This case is before the Court after being transferred from the United States Bankruptcy Court for the District of Nebraska. The Bankruptcy Court found that it lacked subject matter jurisdiction over the interpleader Complaint. (Filing No. 1.) The parties to this case have responded to the cross Motions with their "Objections." The Nebraska Rules of Bankruptcy Procedure state:

> A party resisting a motion for summary judgment must file a written objection or resistance . . . A brief in support of the resistance, along with any evidentiary materials not previously filed on which the objecting party relies, should be filed at the same time as the resistance or objection.

Neb. R. Bankr. P. 7056-1(B)(1), (3). There is no rule in the Neb. R. Bankr. P. allowing a movant to file a reply to an "objection," and the parties here have not done so. Although this Court's local rules state a "party opposing a motion must not file an . . . 'objection' . . . [but] must file a brief that concisely states the reasons for opposing the motion and cites to supporting authority," NECivR 7.0.1(b)(1)(A), and also allows the moving party to file a reply brief addressing issues raised in the opposing brief, Id. at 7.0.1(c), the Court, "[n]otwithstanding contrary authority, in the interest of justice . . . may deviate from this [C]ourt's rules or procedures." NEGenR 1.1(c). The Neb. R. Bankr. P. will apply to the cross Motions at issue.

submitted in support of their respective positions. For the reasons discussed below, CNH's Motion will be denied, and the Robertses' Motion will be granted.

## UNDISPUTED FACTS

Based on the Court's review of the parties' briefs and the evidentiary record, the following facts are not in dispute.

On January 22, 2010, Rick and Loretta Roberts filed for Chapter 7 Bankruptcy. At that time, they owned and lived on a 143.06 acre tract of land known as Unit #54 of Mirage Flats Irrigation Project ("Unit #54"). CNH held a first deed of trust on Unit #54. Defendant Pinnacle Bank held a second deed of trust in Unit #54. The Robertses claimed a homestead exemption in Unit #54 pursuant to Neb. Rev. Stat. §§ 40-101 to 40-108 (Reissue 2008). CNH obtained relief from the automatic stay and filed notices of default and elections to sell Unit #54. The trustee of the Robertses' bankruptcy estate abandoned the estate except to the extent the Robertses' homestead exemption did not cover Unit #54.

Plaintiff Richard P. Garden is the trustee of the first deed of trust on Unit #54. (Filing No. 1.) On November 15, 2010, Greg Frayser, acting as Garden's representative, conducted a trustee's sale of Unit #54 at auction. A bid sheet was used to record the bids. It stated, in part, the "[t]he Trustee's Sale will remain open for ten (10) minutes and I will accept any bids offered during that time." (Filing No. 15-3, ex. 3.) Before Frayser started to accept bids, the bid sheet also stated:

After 10 minutes have elapsed:

This concludes the Trustee's sale.  The highest and prevailing bidder is _____which/who bid $_____.

(*Id.*)  CNH made an opening bid of $50,000.  After other parties submitted their bids, but just before the ten-minute period expired, CNH submitted a bid of $113,000.  Frayser announced the expiration of the ten-minute period, and the president of Pinnacle Bank, Faron Ferguson, protested.  Frayser consulted Garden regarding Pinnacle Bank's protest.  Thereafter, Frayser accepted additional bids.  CNH protested these bids as outside the original ten-minute period, but made another bid of $166,100.  Defendant Gittaway Ranch placed the final and high bid of $166,500, and the property was sold to Gittaway Ranch.  The final bid sheet states that Gittaway Ranch was the prevailing bidder with its bid of $166,500.  (Filing No. 15-4, ex. 4.)

On December 16, 2010, Garden filed his interpleader Complaint to allow the Defendants to litigate the rightful distribution of the Unit #54 sale proceeds.

## DISPUTED FACTS

Based on the Court's review of the parties' briefs and the evidentiary record, the following facts are in dispute.

CNH contends that an announcement was made that the trustee sale had concluded upon the expiration of the ten-minute period, and then the sale reopened after Frayser consulted with Garden.  (Filing No. 15-1, Dep. of John Zapata, ex. 1 at ¶ 8.)  The Robertses contend that no declaration was made that Unit #54 was sold to CNH, and that the sale did not close, but continued after Frayser consulted with Garden.  (Filing No. 18, Aff. of Rick Roberts, at ¶ 7.)  The Robertses also contend that no one at anytime made an announcement when the ten-minute period began or when it was about to end.  (*Id.* at ¶ 8.)  Pinnacle Bank asserts that, although the auctioneer announced that he would keep the sale open for ten minutes, he did not announce that the sale would close after ten minutes and no other bids would be accepted.  (Filing No. 21, Aff. of Faron Ferguson, at ¶ 3.)  Pinnacle Bank also asserts that immediately after CNH placed its $113,000 bid, the

auctioneer announced without warning that the bidding had closed and did not ask if any other bidder wished to submit a bid. (*Id.* at ¶ 5.)  Pinnacle Bank's president, Faron Ferguson, stated that "[a]t the commencement of the sale, Mr. Frayser . . . announced he would keep the sale open for ten minutes[,]" and described the end of the ten-minute period as "Mr. Frayser clos[ing] the sale without providing opportunities for any other bidders[.]" (*Id.* at ¶¶ 3, 6.)

## STANDARD

Summary judgment is only proper when the Court, viewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in the nonmoving party's favor, determines the evidence "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Semple v. Fed. Express Corp.*, 566 F.3d 788, 791 (8th Cir. 2009) (quoting Fed. R. Civ. P. 56(c)).[2]  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  The moving party need not negate the nonmoving party's claims by showing "the absence of a genuine issue of

---

[2]"When deciding or reviewing cross-motions for summary judgment, the approach is only slightly modified." *Williams v. City of Omaha*, 8:02cv451, 2004 WL 390929, at *1 n.1 (D. Neb. Mar. 2, 2004); *accord Nuzum v. Chlorella*, No. 8:05cv335, 2006 WL 3825111, at *5 n.5. (D. Neb. Dec. 27, 2006).  As explained in *Int'l Bhd. of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 403, 404 (7th Cir. 2002):

> The usual Rule 56 standard of review applies to cross-motions for summary judgment, and our review is de novo. . . . To the extent that [the losing party] challenges the court's decision to grant summary judgment in favor of the [prevailing party], we construe the record in the light most favorable to [the losing party]. . . . To the extent that [the losing party] asserts that the court erred in refusing to grant its own motion for summary judgment, the record is evaluated in the light most favorable to [the prevailing party]. . . . Either way, summary judgment is proper if the record demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law under the familiar standards of Fed. R. Civ. P. 56(c).

4

material fact." *Id.* Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

In response to the movant's showing, the nonmoving party's burden is to produce specific facts demonstrating "'a genuine issue of material fact' such that [its] claim should proceed to trial." *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 422 (8th Cir. 2009), *cert. denied,* 130 S. Ct. 1074 (2010) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The nonmoving party is required to demonstrate a "genuine issue of material fact" that is outcome determinative–"a dispute that might 'affect the outcome of the suit under the governing law.'" *Bloom v. Metro Heart Group of St. Louis, Inc.*, 440 F.3d 1025, 1029 (8th Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). Thus, a "genuine issue" is more than "'some metaphysical doubt as to the material facts,'" *Nitro,* 565 F.3d at 422 (quoting *Matsushita*, 475 U.S. at 586), and "'the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.'" *Bloom*, 440 F.3d at 1028-29 (quoting *Anderson*, 477 U.S. at 247-48) (emphasis in original).

In other words, in deciding "a motion for summary judgment, [the] 'facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts.'" *Ricci v. DeStefano*, 129 S. Ct. 2658, 2677 (2009) (quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)). Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party"–where there is no "genuine issue for trial"–summary judgment is appropriate. *Matsushita*, 475 U.S. at 587.

**DISCUSSION**

The Robertses argue, relying on the Nebraska Supreme Court's decision in *Gilroy v. Ryberg*, 667 N.W.2d 544 (Neb. 2003), that allowing the additional bids beyond the ten-minute period allowed the trustee sale to realize an additional $53,500 in the sales price and, therefore, CNH cannot set aside the sale of Unit #54 to Gittaway Ranch for $166,500. CNH argues that it is not seeking to set aside a foreclosure sale, but is seeking to enforce a binding contract created between CNH and Garden when CNH submitted its $113,000 bid immediately before the expiration of the ten-minute bidding period. CNH argues that allowing an auctioneer to change the rules mid-auction due to the protest of a bidder would go against the policy of promoting stability and integrity at trustee sales the Nebraska Legislature announced when it enacted the Nebraska Trust Deeds Act.

**I. CNH's Motion**

"A party attempting to enforce a contract . . . has the burden of proving that there was a definite offer and an unconditional acceptance." *Marten v. Staab*, 543 N.W.2d 436, 443 (Neb. 1996). In other words, the party must show "that a valid, legally enforceable contract exists." *Id.* Where a party asserts that a contract is formed during an auction, the Court must classify the type of auction that took place: (1) "with reserve," or (2) "without reserve." *Id.* (citing 1 Arthur L. Corbin, Corbin on Contracts § 4.14 (Joseph M. Perillo rev. ed. 1993)). An auction is presumed to be "with reserve." *Id.* In an auction "with reserve," "[t]he bidder is deemed to be the offeror, while the auctioneer is the offeree." *Id.*[3] "[T]he auctioneer, as agent of the seller, invites bids (offers) with the understanding that no bargain exists until the seller has made a further manifestation of assent; the auctioneer

---

[3] In an auction "without reserve," the roles are reversed; "the seller becomes the offeror and the bidder the offeree[.]" *Marten*, 543 N.W.2d at 443 (quotations and citation omitted).

may reject all bids and withdraw the goods from sale until he announces completion of the sale." *Id.* (quotations and citation omitted).[4]

CNH bears the burden of proving that a contract for the sale of Unit #54 formed between it and Garden. The auction is presumed to be an auction "with reserve," *Id.*; *see also* Neb. Rev. Stat. § 76-1009 (Reissue 2009) ("Every bid shall be deemed an irrevocable offer"), and CNH points to nothing in the record that shows the auction was "without reserve." Therefore, at the auction, Frayser invited bids "with the understanding that no bargain exist[ed] until" he announced the sale was complete, and until the seller, Garden, made a further manifestation of assent to the sale. *See Martin,* 543 N.W.2d at 443.

At the end of the ten-minute period, Frayser announced that he was closing the bidding. He did not announce that the property had been sold to CNH. Frayser then consulted with Garden, the trustee and seller of the property, after the ten-minute period terminated. Frayser likely would not have allowed parties to submit additional bids after he consulted with Garden had Garden made a manifestation of further assent to the sale and accepted CNH's offer. The final bid sheet states that Gittaway Ranch was the prevailing bidder. Nothing indicates that CNH's name ever appeared on the line indicating that it was the prevailing bidder. Therefore, CNH's Motion for Partial Summary Judgment

---

[4] *See also In re NextWave Personal Commc'ns, Inc.*, 200 F.3d 43, 60, 61 (2d Cir. 1999) (quotations and citations omitted):

> [T]he close of the auction-traditionally the drop of the hammer-signals acceptance of an offer and forms an enforceable contract. . . . The timing of acceptance, and therefore of the creation of a contractual obligation, is different if the auction sale is conducted 'with reserve': Where the seller reserves the right to refuse to accept any bid made, a binding sale is not consummated between the seller and the bidder until the seller accepts the bid.
> . . .
> Auctions with reserve stand or fall as a matter of the seller's discretion, usually on the basis of the pecuniary sufficiency of the bids.

7

is denied.[5]  *See Joseph Heiting and Sons v. Jacks Bean Co.*, 463 N.W.2d 817, 821 (Neb. 1990) ("When the issue is whether an acceptance of an offer was sufficient to create a contract, the issue is one of fact and summary judgment is not proper").

## II. The Robertses' Motion

The Robertses ask the Court to find that there is no genuine issue of material fact regarding the trustee's valid sale of Unit #54 to the highest bidder at the price of $166,500.

CNH contends that it does not seek to set aside the trustee sale, but is attempting to enforce a contract for the sale of Unit #54. Even if CNH entered into a contract for the sale of Unit #54 and has a cause of action for breach of contract,[6] it does not necessarily follow that Unit #54 was not sold to Gittaway Ranch. CNH acknowledges in its Statement of Undisputed Facts that after Frayser accepted additional bids, Unit #54 "was sold to

---

[5]CNH relies on *Commercial Fed. Sav. & Loan Ass'n v. ABA Corp.*, 431 N.W.2d 613 (Neb. 1988), for its assertion that allowing the auctioneer to change its rules mid-auction would go against the policy of promoting integrity and stability at trustee sales. However, the court in that case determined that the integrity and stability of a judicial sale would be undermined if it allowed a party to submit a sham bid to discourage other bidders, only to revoke that bid and submit a lower bid, thereby resulting in a reduced sales price. *Id.* at 616. Here, the record does not indicate that Pinnacle Bank, or any other bidder at the auction, submitted a sham bid in order to discourage other bidders. Instead, the record indicates that multiple bidders would have continued to bid had there been no ten-minute period, or would have submitted their bids prior to the end of the ten-minute period had they known when that period was going to end. Further, reopening or resuming the bidding resulted in an increased, not a decreased, sales price.

The Court also notes that there might be an issue of whether the alleged contract is unenforceable because of the Statute of Frauds. *See* Richard A. Lord, 1 *Williston on Contracts* § 4:12, 537-40 (4th Ed. 2007) (footnotes omitted):

> One further note about offers and acceptances in the auction setting is in order. . . . [T]he contract thus formed may be unenforceable under the Statute of Frauds. As a general rule, the auctioneer at an auction sale is the agent not only of the seller, but also of the buyer for purposes of making and signing a memorandum sufficient to satisfy the Statute. . . . The signature of the auctioneer must generally be made immediately following the sale, and, according to the traditional view, between the time the hammer falls (or the closing of the sale is otherwise announced) and the memorandum is written, the bidder may withdraw its bid or the owner may properly revoke the auctioneer's authority to sign on the owner's behalf.

[6]*See* Richard A. Lord, 25 *Williston on Contracts* § 66:81, 16 (4th Ed. 2002) ("A purchaser who is not in default under a contract for the sale of real estate has a cause of action for damages where the vendor wrongfully fails or refuses to convey in accordance with the terms of the contract").

8

[Gittaway Ranch]." (Filing No. 14, at ¶ 16.) As a result, CNH's entitlement to the proceeds of the sale of Unit #54 still depends upon whether it can set aside the sale of Unit #54 to Gittaway Ranch.

The Nebraska Supreme Court held in *Gilroy* that a party seeking to set aside a trustee's sale must show "(1) the defect, by its nature, would have a tendency to result in a reduced sale price and (2) the sale price was inadequate." *Gilroy*, 667 N.W.2d at 555, 559.

CNH claims that allowing for bids after the expiration of the ten-minute period was improper because Frayser announced he would accept bids during a ten-minute period and did not expressly state that he would accept bids after that period. This alleged "defect, by its nature, [did not] have a tendency to result in a reduced sale price." *Gilroy*, 667 N.W.2d at 555, 559. To the contrary, the record reveals that acceptance of additional bids resulted in an increased sale price–one that was $53,500 higher than if bids had been refused at the expiration of the ten-minute period. Even viewing the facts in the light most favorable to CNH, no reasonable finder of fact could conclude that accepting bids after the expiration of a ten-minute time limit–especially a time limit beginning at a moment not specifically revealed to bidders and ending immediately after CNH's bid with no opportunity for others to offer a higher bid–would have a tendency to result in a *reduced* sale price. Nor could any reasonable finder of fact conclude that $166,500, when compared to $113,500, was *inadequate.* Therefore, the Robertses' cross Motion for Partial Summary Judgment is granted.

9

Accordingly,

IT IS ORDERED:

1. Defendant Central Nebraska Housing Corp.'s cross Motion for Partial Summary Judgment (Filing No. 12) is denied;

2. Defendants Rick Roberts and Loretta Sue Roberts's cross Motion for Partial Summary Judgment (Filing No. 13) is granted; and

3. The "Objections" (Filing Nos. 16, 20, 25) are terminated.

DATED this 5th day of October, 2011.

                              BY THE COURT:


                              s/Laurie Smith Camp
                              United States District Judge